UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOHN C. DEMOPOULOS, | ) | No. 07-71355 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| CATHY TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adv. No. 07-96062 |
| | ) | |
| JOHN C. DEMOPOULOS, | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N

This matter is before the Court on (1) the motion filed by the Defendant, John C.
Demopoulos (Debtor), to dismiss the complaint filed by the Plaintiff, Cathy Taylor (Creditor), and
(2) the motion to strike the Debtor's motion to dismiss filed by the Creditor. For the reasons set
forth below, the Court denies the Creditor's motion to strike and grants in part and denies in part the
Debtor's motion to dismiss.

The Debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code on June 4,
2007. On his statement of financial affairs, in response to a request to list all suits and administrative
proceedings to which the Debtor is or was a party within one year immediately preceding the filing
of the bankruptcy case, the Debtor listed "Cathy Taylor v. John Demopoulos, Case No. 06 L 236"
as a pending tort case in the "17th Judicial Circuit, County of Winnebag[o], State of Illinois."

On August 9, 2007, the Chapter 7 Trustee reported there were no assets of the estate to be
administered for the benefit of creditors. On August 22, 2007, within the time allowed for filing
objections to discharge, the Creditor filed her complaint seeking a determination of

nondischargeability of a debt under Section 523(a)(2)(A) (false pretenses, false representation or actual fraud) and Section 523(a)(4) (fraud or defalcation of a fiduciary) of the Bankruptcy Code. The Debtor was granted a discharge on January 10, 2008, and on January 25, 2008, the bankruptcy case was closed and the Chapter 7 Trustee was discharged. This adversary proceeding appears to be the only matter remaining in the case.

Because the facts giving rise to this adversary proceeding are unusual, the allegations of the Creditor's complaint, which the Court must take as true for purposes of reviewing the Debtor's motion to dismiss, are set forth in great detail. At all relevant times, the Debtor was a Vice-President of National City Bank and also owned a controlling ownership interest in J. Richards Mayflower, LLC, (Mayflower) which owned and operated the J. Richards Mayflower Restaurant (the Restaurant) in Loves Park, Illinois. The Debtor was a neighbor of the Creditor and was also the Creditor's personal banker at National City Bank. The Creditor asserted that she had confidence in the Debtor and relied on his integrity and advice and followed his direction in matters of money and investment. The Creditor maintained accounts at National City Bank, including two certificates of deposit in the amount of $100,000 each.[1] Through his position as Vice President and as the Creditor's personal banker and financial advisor, the Debtor was aware that the Creditor had certificates of deposit at National City Bank.

In 2005, the Debtor purchased the Restaurant. The Creditor's former husband made a loan to the Debtor of $100,000 for operating money and capital improvements to the Restaurant. The Debtor also hired the Creditor's former husband as manager for the Restaurant. However, shortly

---

[1] The Creditor's complaint is not clear regarding either the number or the dollar amount of the certificates of deposit at National City Bank. While at the beginning of her complaint, she states that she has two certificates of deposit in the amount $100,000 each, later in the complaint, she refers to either one or two certificates of deposit in the amount of $50,000.

2

after receiving the $100,000 loan, the Debtor discharged the Creditor's former husband and failed
to repay the loan. The Debtor also hired the Creditor to help manage the Restaurant.

Under Count I, the Creditor alleges that, before leaving on vacation in January of 2006, the
Debtor informed her that he was obtaining a line of credit for the Restaurant to pay bills and
instructed the Creditor to pay the $20,000 worth of bills that were outstanding, which she proceeded
to do. A few days later, the branch manager of National City Bank, Brian Anderson (Anderson),
came into the Restaurant, acting on the request and direction of the Debtor. Anderson presented
papers for a line of credit in the amount of $25,000 to the Creditor for her signature. The Creditor
did not understand why her signature was needed because the Debtor never told her that the line of
credit was to be in her name. Anderson stated that the Debtor had said the Creditor was fully
informed about the line of credit. The Creditor was concerned that she had already mailed the bill
payments, and asked Anderson if she "would be in trouble if she did not sign the credit line."
Anderson "gave the Creditor the impression that she was responsible for the checks being signed
with the knowledge that there was [sic] not enough funds in the restaurant account." The Creditor
then signed the loan papers "being pressured into feeling that there was no other choice." The
Creditor later discovered that the money from the line of credit had been deposited in the Restaurant
account four days before the line of credit papers were brought to the Creditor for her signature. The
Debtor had authorized a draw against the line of credit by Mayflower in the amount of $20,000 four
days prior to the date the Creditor signed the loan papers. Under the terms of the loan, the Creditor
was solely and personally liable for the $25,000 line of credit. The Debtor later sent an e-mail to the
Creditor stating that the line of credit would be the first thing to be paid by Mayflower. The Creditor
has repaid the $25,000 line of credit, but has received no reimbursements from either Mayflower or
the Debtor.

3

Under Count II, the Creditor alleges that, in April of 2006, the Debtor initiated a discussion with the Creditor about getting a lien on her certificate of deposit in the amount of $50,000. According to the Creditor, she told the Debtor she did not know what he meant, and he replied, "Trust me, I'm your banker." Later, Amy Gough, a Branch Manager of National City Bank, at the direction of the Debtor, brought papers from the bank to the Restaurant for the Creditor's signature. The Creditor was not given a chance to read the papers or to show them to her "financial advisor," but was "pressured into signing the papers."[2] The Creditor alleges she was never informed that the papers were loan documents, or that if the Debtor did not repay the loan, the Creditor would lose her certificate of deposit. Again, at the direction of the Debtor, proceeds of the loan were deposited into the Mayflower checking account before the Creditor signed the loan documents, and the Creditor never received any paper work or evidence of this pre-loan deposit.

After the Creditor signed the loan documents, the Debtor contacted her and informed her that "she forgot to sign one of the papers" and that Kim Wright, a branch manager, would be coming by the Restaurant with the additional document for the Creditor to sign. At the Debtor's direction, the Creditor signed this additional document, which she later discovered was another $50,000 line of credit secured by her certificate of deposit. Before the Creditor signed the loan documents, the Debtor had represented to her that the documents were related to a term loan for the Restaurant and that the Restaurant would be solely liable for the repayment of the loans. The Debtor never told the Creditor that she would be pledging her $50,000 certificate of deposit as security for the loan, and he intentionally misled her regarding her personal liability on the loan. National City Bank has offset against the Creditor's certificates of deposit to repay the loans.

---

[2] In her complaint, the Creditor asserts that the Debtor was her "personal banker and financial advisor." It is unclear, however, whether this reference in the complaint to "financial advisor" in this particular instance means the Debtor or a third party.

4

Under Count III, the Creditor asserts that the Debtor intentionally misled her as to the true nature of the $50,000 line of credit loan obligation that he described as "an additional paper which she forgot to sign." The Debtor led the Creditor to believe that the $50,000 line of credit papers were part of the prior $50,000 term loan papers on which only Mayflower was obligated. Again, the Creditor alleges that the Debtor directed money to be deposited in the Mayflower account before the loan documents were signed, and he never advised her that she was pledging her $50,000 certificate of deposit as security on the loan.

Common to Counts I - III, the Creditor alleges that the Debtor intentionally misled her as to her personal liability on the loans and intentionally failed to disclose that the loans were secured by her certificates of deposit with the intention of obtaining her credit and certificates of deposit for the loans for the Restaurant. She further alleges that the Debtor knew his representations were deceptive or false at the time he made them to induce the Creditor into signing the loan documents and intended for the Plaintiff to rely upon such false and deceptive representations. She alleges she has been damaged as a result of the Debtor's intentional misrepresentations. She seeks compensatory and punitive damages, as well as a finding that her claims are nondischargeable.

In Count IV, the Creditor alleges that the Debtor became aware of the Creditor's money market checking account through his position as Vice President of National City Bank. On March 23, 2006, the Debtor approached the Creditor and asked her to call the bank and request that $10,068.12 be paid over to the Debtor to pay bills at the Restaurant. Although the Debtor promised that the loan would be repaid within one week, the Debtor has failed and refused to repay the $10,068.12. The Creditor further alleges that, at the time of the request, the Debtor had no intention of repaying the loan, but intended the Creditor to rely on his false and deceptive representations of

5

repayment to induce her into making the loan. In reliance on the representation of prompt repayment, the Creditor made the loan, and has been damaged in the amount of $10,068.12.

The Court will first address the Creditor's motion to strike the Debtor's motion to dismiss. The Creditor asserts that the motion to dismiss should be stricken because it was untimely filed. According to the motion, the Creditor filed her complaint on August 22, 2007, and service was executed on the Debtor on August 28, 2007. At a status hearing held on September 26, 2007, the Debtor requested and was granted an extension of time to October 24, 2007, to file a responsive pleading. The Debtor was subsequently granted a second extension until October 30, 2007. However, the Debtor did not file his motion to dismiss until December 4, 2007, and did not obtain leave of court or any further extension of time. The Creditor requests that the Court strike the Debtor's motion to dismiss and that a default judgment be entered for the Creditor in the amount of $287,537.78.

The Debtor did not file a written response to the motion to strike. However, at the hearing, the Debtor's attorney responded that she does not practice bankruptcy law but had agreed to represent the Debtor without pay in this adversary proceeding because she was familiar with the facts of the case from a prior representation and knew the Debtor was unable to pay the retainer requested by his bankruptcy attorney to defend him in the adversary proceeding. The Debtor's attorney further stated that she had encountered some delays in getting registered with the Bankruptcy Court to electronically file documents in that Court. At a hearing held on October 24, 2007, the Debtor's attorney advised the Court of the difficulties she was having and provided the Creditor's attorney with an unfiled copy of her motion to dismiss.[3] When the Debtor's attorney was finally registered

---

[3]The Court's docket shows that on October 24, 2007, the Creditor filed a motion for default judgment based on the Debtor's failure to file a responsive pleading. According to the Debtor's attorney, this motion was denied by the Court at the hearing held on October 24, 2007.

to file electronically, her office mistakenly filed the motion to dismiss in the main bankruptcy case instead of in the adversary case.[4] Upon notification from the Clerk's office that she had filed the motion in the wrong case, the Debtor's attorney re-filed her motion to dismiss in the adversary case on December 3, 2007. The Debtor's attorney stated that the only differences between the motion that was filed and the motion she provided to the Creditor on October 24, 2007, were that the exhibits (copies of the loan agreements) were attached and filed and she added an introduction in the motion itself.

The law favors a resolution of disputes on their merits and not on the overly technical interpretation of the rules of procedure, and a challenge of untimeliness is measured by its impact on the other side and what prejudice, if any, is caused by the delay. *In re Macagnone*, 216 B.R. 668, 670 (Bankr.M.D.Florida 1997); *see also In re Cantwell*, 17 B.R. 639, 641 (Bankr.E.D.Pa. 1982) (concluding that, although motion to dismiss was filed four days late, to enter a default judgment against the debtor would be too harsh and drastic a remedy for the late filing where the creditors failed to allege any prejudice resulting from the delay). In this case, the Creditor has failed to allege or demonstrate any prejudice resulting from the Debtor's late filing of the motion to dismiss. The Creditor does not dispute the fact that she received an unfiled copy of the Debtor's motion to dismiss; instead, she admits receiving a copy without exhibits at the hearing on October 24, 2007, prior to the expiration of the second extension. In fact, according to the Court's docket, the Creditor filed her response to the Debtor's motion to dismiss on November 9, 2007, almost a month before the Debtor's motion to dismiss was finally correctly filed in the adversary case. Accordingly, the Court cannot find that any prejudice resulted to the Creditor as a result of the late-filed motion to dismiss. The Creditor's motion to strike is denied.

---

[4]The Court's docket shows that the motion to dismiss was filed in the main bankruptcy case, No. 07-71355, on November 28, 2007. On December 3, 2007, the docket shows a notation stating, "Corrective entry docketed on wrong case, filer notified to refile in adversary case 07-96062."

The Court will next address the Debtor's motion to dismiss. Although the Debtor does not indicate in his motion to dismiss what rule of federal procedure he is relying on, it appears from the allegations in the motion and the arguments made at the hearing on the motion that the Debtor is moving to dismiss under Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal of a complaint for failure to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).[5]

In considering a motion to dismiss under Rule 12(b)(6), the court must assume as true all well-pleaded facts in the complaint and view them in a light most favorable to the plaintiff, drawing all reasonable inferences in favor of the plaintiff. *Veazey v. Communications & Cable of Chicago, Inc.,* 194 F.3d 850, 853-54 (7th Cir. 1999). The purpose of such a motion is not to decide the merits of the case, but to test the legal sufficiency of the complaint; it is not designed to assess the factual basis of the claims. *In re Perez,* 173 B.R. 284, 298 (Bankr.E.D.N.Y. 1994). The issue involved is not whether the claimant is entitled to prevail, but whether the claimant is entitled to offer evidence in support of the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) , *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). The United States Supreme Court recently held that a complaint must always allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* – U.S. – , 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *Limestone Development Corp. v. Village of Lemont, Ill.,* 520 F.3d 797, 803 (7th Cir. 2008) (noting that "[t]he old formula - that the complaint must not be dismissed unless it is beyond doubt without merit - was discarded by the *Bell Atlantic* decision."). If a court finds that a complaint fails to sufficiently state a cause of action as pleaded, the proper procedure in the federal courts is to permit the plaintiff to file an amended

---

[5]The Court notes that, although the Debtor's motion to dismiss properly identifies the Creditor's complaint as one to determine the dischargeability of a debt, in their respective arguments on the motion to dismiss, the parties cite only state law cases. Neither party frames their analysis in the context of the Bankruptcy Code or cases thereunder. However, as the question of whether a debt is dischargeable is an issue of federal bankruptcy law arising under the Bankruptcy Code, the Court will analyze the arguments presented by the parties in light of applicable bankruptcy law.

complaint instead of outright dismissal of the plaintiff's claims. *Murray v. Royal Alliance Associates*, 375 B.R. 208, 216 (M.D.La. 2007); *In re Perez*, 155 B.R. 844, 850 (Bankr.E.D.N.Y. 1993).

Under federal "notice" pleading requirements, pleadings need only contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008 (making Fed. R. Civ. P. 8 applicable in bankruptcy proceedings). "Notice" pleading merely requires that, in order to state a claim for relief, the plaintiff gives notice to the defendant of the theory behind the claims alleged and the basic facts supporting those allegations. *Maclin v. Paulson*, 627 F.2d 83, 86 (7th Cir. 1980). Pleadings in federal court should be liberally construed. *Strauss v. Chicago*, 760 F.2d 765, 767 (7th Cir. 1985). As long as fair notice has been given and the court can glean an actionable claim from the complaint, the court must entertain the party's case. *See American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 723 (7th Cir. 1986).

When a party alleges fraudulent activity, however, the pleader must "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009 (making Fed. R. Civ. P. 9 applicable in bankruptcy proceedings). Rule 9(b) should be read in conjunction with Rule 8; therefore it is not necessary that a plaintiff plead each element of fraud so long as the circumstances constituting fraud have adequately been set forth. *See Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). When alleging fraud in a complaint, it is only necessary to set forth the basic outline of fraud and to indicate who made the misrepresentations and the time and place the misrepresentations were made. *In re Janikowski*, 60 B.R. 784, 790 (Bankr.N.D.Ill. 1986). However, mere conclusory allegations will not satisfy the requirements of Rule 9(b) and may provide grounds for dismissal. *Veal v. First American Sav. Bank*, 914 F.2d 909, 913 (7th Cir. 1990).

In his motion to dismiss, the Debtor asserts that the Creditor's complaint must be dismissed because the Creditor has not sufficiently pleaded facts to establish justifiable reliance on the Debtor's alleged misrepresentations. Specifically, the Debtor asserts that Illinois law precludes a claim for fraud based on oral misrepresentations when the claimant has entered into a written agreement that is complete on its face. According to the Debtor, the bank documents signed by the Creditor contain all of the information the Creditor claims the Debtor failed to disclose. The Debtor also asserts that the Creditor has failed to plead sufficient facts to establish the existence of a fiduciary relationship.[6]

The Creditor responds that the complaint alleges sufficient facts to establish a fiduciary relationship between the parties because it asserts that the Debtor was the Vice President of National City Bank, the controlling stockholder of Mayflower, the Creditor's employer, and the Creditor's banker and financial advisor.

There is one preliminary procedural matter the Court must address before turning to the substantive allegations of the motion to dismiss. The Debtor attached as exhibits to his motion to dismiss five documents, which include: (1) a Signature Line of Credit Agreement dated January 17, 2006; (2) an Installment Note and Security Agreement dated April 6, 2006; (3) an Assignment of Deposit Account dated April 6, 2006 (first page only); (4) a Limited Liability Company Resolution to Borrow/Grant Collateral dated April 6, 2006, and (5) an Assignment of Deposit Account dated April 5, 2006. While the loan documents were referred to in general terms in the Creditor's complaint, none of the loan documents were attached as exhibits to her pleading.[7] The Debtor also

---

[6]There is some ambiguity in the Debtor's motion to dismiss. The motion to dismiss requests dismissal of the Creditor's complaint in its entirety but only substantively addresses Counts I-III of the complaint. It does not address Count IV of the complaint. In Count IV, the Creditor seeks compensatory and punitive damages arising out of a cash loan of $10,068.12 made by the Creditor to the Debtor in reliance on his promise to repay the loan within one week. In the heading for Section II, the $10,068.12 amount is referenced, but all of the arguments under Section II relate to loan documents involving the Creditor's $50,000 certificates of deposit. The loan documents relied upon by the Debtor are not dispositive of the allegations under Count IV, and the Debtor made no other arguments with respect to the allegations under Count IV. Accordingly, the Court will treat the motion to dismiss as a motion to dismiss Counts I-III only and will not make any determinations with respect to Count IV.

[7]According to the Debtor, the Creditor had attached the loan documents to her complaint in the state court action. According to the Debtor's motion to dismiss and the remarks made by the parties at the hearing held before this Court on January 7, 2008, the state court had dismissed the fraud counts and had granted the Plaintiff leave to amend her complaint to allege a cause of action

submitted as an exhibit an affidavit in which he testified, among other things, that he was never the Creditor's financial advisor or personal banker.

As noted earlier, in determining whether to grant a motion to dismiss under Rule 12(b)(6), a court should primarily consider the allegations in the complaint. *Burton v. Sheahan*, 68 F.Supp.2d 974, 978 (N.D.Ill. 1999). However, Rule 12(d) provides a Rule 12(b)(6) motion to dismiss must be converted to a motion for summary judgment if matters outside the pleading are presented to and accepted by the court. Fed. R. Civ. P. 12(d). If extra-pleading material is presented, the court may *sua sponte* convert a motion under Rule 12(b)(6) into a motion for summary judgment. The court has complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion to one for summary judgment, or to reject the extra-pleading material and simply not consider it. *See, e.g., Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). If the motion is converted to a motion for summary judgment, the court must afford the parties an opportunity to submit additional evidentiary material. *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

Not all documents attached to a motion to dismiss are considered matters outside the pleadings, however. Numerous cases have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned. *See* 5C CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND

---

for duress. The Creditor had filed an amended complaint alleging duress, and a second motion to dismiss filed by the Debtor was pending at the time the Debtor filed his petition for relief in this Court. The filing of the bankruptcy stayed the proceedings in the state court before the second motion to dismiss had been ruled upon, and no motion to lift the stay was filed to allow the state court case to proceed.

PROCEDURE § 1366. These items may be considered by the court without converting the motion into one for summary judgment. *Id.* Furthermore, documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Venture,* 987 F.2d at 431. Although a plaintiff is under no obligation to attach documents relating to the claim, a defendant may introduce certain documents if a plaintiff has failed to do so. *Id.; see also Perry v. New England Business Service, Inc.,* 347 F.3d 343, 345 n.2 (1st Cir. 2003) (where a complaint's factual allegations are expressly linked to and dependent upon a document, the authenticity of which is not challenged, that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)).

In this case, the Creditor in her complaint refers many times to the various loan agreements she signed with National City Bank. These documents are central to her claims because they establish the amount of the loans and thereby the amount of the claim that the Creditor has against the Debtor. Accordingly, the Court may consider these documents in deciding the Debtor's motion to dismiss.

The Court, however, will not consider the Debtor's affidavit, submitted with his reply to the Creditor's response to the motion to dismiss. This document is clearly extra-pleading material, and to consider it, the Court must convert the motion to dismiss to a motion for summary judgment. The Court declines conversion in this instance as such a conversion would not be appropriate at this time as it does not appear from the record that the parties have fully engaged in discovery. Accordingly, the Court will confine its inquiry to the allegations in the Creditor's complaint and the loan documents, which are clearly referenced in and central to the Creditor's complaint.

While the alleged facts are unusual, the applicable law is straightforward. The Creditor alleges her claims against the Debtor are nondischargeable under Section 523(a)(2)(A). Section

12

523(a)(2)(A), provides in part as follows:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt—
>
> \* \* \*
>
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
>>
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(A) lists three separate grounds for nondischargeability: actual fraud, false pretenses, and false representation. Despite the recitation of three independent grounds, courts historically applied a single, unified test to proceedings under the section, containing the following elements: (1) the debtor made a representation to the creditor; (2) the debtor's representation was false; (3) the debtor possessed *scienter*, i.e., an intent to deceive; (4) the creditor relied on the debtor's misrepresentation, resulting in a loss to the creditor; and (5) the creditor's reliance was justifiable. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).

Traditionally, bankruptcy courts have limited the application of Section 523(a)(2)(A) to the fraud analysis outlined above requiring a false representation by the debtor and reliance by the creditor. However, the Seventh Circuit in *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000), took a broader approach and instructed that actual fraud is broader than misrepresentation and also encompasses "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another." *Id.* at 893. Whether or not the fraud involves a misrepresentation, it must be *actual* fraud. It does not include *constructive* fraud. *Id.* at 894. And although reliance is a necessary element where the fraud takes the form of a misrepresentation,

13

reliance is irrelevant to broader forms of fraud that do not include a representation by the debtor. *See id.* Because Section 523(a)(2)(A) includes only actual fraud, not constructive fraud, the focus must be on the debtor's subjective state of mind at the time of the alleged fraudulent conduct, whether the intent to defraud was implemented by a misrepresentation or by some other improper means. *Id.* Where a false representation is not present, the creditor must prove that (1) the debtor perpetrated a fraud against the creditor; (2) the debtor acted with an intent to defraud; and (3) the creditor sustained loss or damage as a proximate cause of the fraud. *Id.* at 893-94; *In re Lee,* 304 B.R. 344, 348 (Bankr.N.D.Ill. 2004).

The Debtor asserts that the Creditor's claim for fraud is precluded because the written agreements signed by the Creditor contradict the oral representations she alleges she relied upon. Thus, according to the Debtor, there is no set of circumstances under which the Creditor can show she "justifiably relied" on the Debtor's oral representations.

Justifiable reliance is a less demanding standard than reasonable reliance and requires only that the creditor did not "blindly [rely] upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field,* 516 U.S. at 71. Justifiable reliance is an intermediate level of reliance, falling somewhere between the more stringent "reasonable reliance" guidepost and the lenient "reliance in fact." *Id.* at 74-75. In application, this standard does not impose a duty to investigate unless the falsity of the representation is easily detectable. *Id.* at 70-72. Due to the unique circumstances of each case, the issue of justifiable reliance is not considered under an objective standard, but instead a fact sensitive inquiry should be made into the characteristics of a particular plaintiff. *Id.* at 71.

Although the Creditor's complaint is eleven pages long, the Court's review shows only a few actual allegations that constitute arguable misrepresentations made by the Debtor upon which the

14

Creditor could have relied. Many of the allegations in the complaint relate to the actions of persons other than the Debtor. With respect to the $25,000 line of credit agreement (Count I), the only arguable misrepresentations alleged to have been made by the Debtor are as follows:

(1) the Debtor told the Creditor he was getting a line of credit to pay the restaurant bills, but omitted telling her that the loan would be in her name and that she would be personally liable; and

(3) after the loan was signed by the Creditor, the Debtor sent an e-mail promising that this loan would be the first thing repaid by Mayflower.

It is well-settled that a party may not close their eyes to the clear language in a contract and then claim that they justifiably relied on oral representations contrary to such language. *See, e.g.*, *Hall v. Burger King Corp.*, 912 F.Supp. 1509, 1525 (S.D.Fla. 1995) (reliance unjustifiable as a matter of law where plaintiff failed to read the contract); *In re Shaffer*, 206 B.R. 95, 98 (Bankr.M.D. Pa. 1997) (debt dischargeable because creditors could have discovered debtor's misrepresentations by reading document they signed). In this case, as pointed out by the Debtor, the loan documents contained all the information that the Creditor alleges the Debtor omitted telling her. Specifically, the line of credit agreement explains that the credit limit on the agreement is $25,000, contains a promise to repay all amounts due under the agreement, even if the borrower allows another person to have access to the line of credit, and contains provisions regarding default. Before the signature line, the following acknowledgment appears: "You acknowledge receipt of a completed copy of this Agreement, including important information below regarding your rights to dispute billing errors (Your Billing Rights). You intend to be legally bound by all of the terms of this Agreement." The Creditor signed right below this acknowledgment.

The Creditor asserts that because the Debtor made the misrepresentations as a third party beneficiary of the agreements rather than as a direct party to such agreements, the cases holding that there can be no justifiable reliance as a matter of law if the written contract contradicts the oral

15

representations do not apply.  The Creditor stresses that the Debtor made the false representations

as a individual and in his capacity as Vice President of National City Bank. As noted earlier in this

opinion, the facts of this case are somewhat unusual. The cases are clear that if the Creditor had

alleged that National City Bank had made fraudulent representations that were contradicted by the

terms of the written documents between the parties, a plaintiff could not be found to have justifiably

relied on the alleged oral representations. *See Hall*, 912 F. Supp. at 1525; *Shaffer*, 206 B.R. at 98.

In this case, however, the alleged misrepresentations were made by the Debtor, who was not a direct

party to the loan transactions. Nevertheless, the Court must still consider whether, in light of all of

the facts and circumstances, the Creditor's reliance on the misrepresentations was "justifiable." As

noted earlier, the standard of "justifiable reliance" is a lesser standard than "reasonable reliance" and

does not impose a duty to investigate unless the falsity of the representation is easily detectable.

*Field*, 516 U.S. at 70-72. In this case, however, a cursory review of the loan documents signed by

the Creditor would have revealed all of the information that she alleges was misrepresented by or

not disclosed by the Debtor. Given the fact that the written loan documents contained all of the

information the Creditor claims the Debtor misrepresented or failed to tell her, the Creditor cannot

show that her reliance on the Debtor's oral representations was justifiable.

Additionally, although the Creditor alleges the Debtor promised that the $25,000 loan would

be the "first thing" repaid by Mayflower, the allegation shows on its face that this promise was made

after the Creditor had already signed the loan documents; therefore, she could not have relied on this

promise in agreeing to make the loan to the Debtor. Thus, as currently alleged, there is no set of

facts that the Creditor could show under which she would prevail on Count I as to her claims of fraud

based on the Debtor's false representations.

16

With respect to the loans to Mayflower under which the Creditor pledged her $50,000 certificates of deposit as collateral for the loans (Counts II and III), the Creditor alleges the following false representations or omissions by the Debtor:[8]

(1) The Creditor was never told that the papers she signed were loan documents;

(2) The Creditor was never told that if Mayflower did not repay the loans, she would lose her $50,000 certificates of deposit at National City;

(3) Prior to the Creditor signing the loan documents, the Debtor told her the papers were related to a term loan for Mayflower and that Mayflower would solely be responsible for payment;

(4) The Debtor never advised the Creditor that she was pledging her $50,000 certificate of deposit as security for the loan to Mayflower; and

(5) The Debtor told her there was "an additional paper which [the Creditor] forgot to sign" and led the Creditor to believe this paper was part of the prior $50,000 loan papers on which only Mayflower was obligated and did not inform her that this document was an additional loan to the previous $50,000 term loan or that if this loan was not repaid, the Creditor would lose her other $50,000 certificate of deposit.

Again, as was the case under Count I, all of the information listed in (1) through (4) above that the Creditor alleges the Debtor failed to tell her was contained in the loan documents that she signed. The Installment Note and Security Agreement clearly identify the borrower as Mayflower, and sets out the security for the loan as "CD Account Number 06330138099 with Lender with an approximate balance of $50,000." Both Assignment of Deposit Account forms identify National City Bank as the "Lender," Mayflower as the "Borrower" and the Creditor as the "Grantor," and states in the assignment clause, "For valuable consideration, Grantor assigns and grants to Lender

[8]The complaint is somewhat vague and ambiguous regarding these alleged loans. The complaint alleges there were two loans to Mayflower in which the Creditor pledged her $50,000 certificate of deposit as collateral. However, the loan documents currently before the Court indicate there is only one loan. Attached to the Debtor's motion to dismiss are Exhibits B-E. Exhibit B is the Installment Note and Security Agreement, dated April 6, 2006, showing that Mayflower was borrowing $50,000 and that the loan would be secured by CD # 06330138099. Exhibit C is an incomplete Assignment of Deposit Account form (no signature page) dated April 6, 2006, showing the Creditor as the grantor of collateral described as "CD Account Number 06330138099" on behalf of the borrower, Mayflower. Exhibit D is the Limited Liability Company Resolution to Borrow/Grant Collateral dated April 6, 2006, and signed by the members of Mayflower, including the Creditor. Exhibit E is a second Assignment of Deposit Account form (this time complete) dated April 5, 2006, showing the Creditor as the grantor of collateral described as "CD Account Number 06330138099"on behalf of the borrower, Mayflower. While this discrepancy will be an issue for trial, the Court must take the allegations of the complaint as true for purposes of resolving the Debtor's motion to dismiss.

17

a security interest in the Collateral . . . to secure the indebtedness . . . ." The "Collateral" is described as "CD Account Number 06330138099 with Lender with an approximate balance of $50,000."[9] Again, this is the information the Creditor claims that the Debtor misrepresented or omitted. Accordingly, the Court concludes there is no set of facts under which the Creditor could show she justifiably relied on the Debtor's false representations set forth in (1) through (4) above as to her claim of fraud based on false representations contained in Counts II and III. Accordingly, to the extent Counts I through III allege the debt is nondischargeable under Section 523(a)(2)(A) based on the false representations set forth in (1) through (4) above, those claims are dismissed without prejudice.

With respect to the alleged false representations set forth in item (5) on page 17 of this Opinion, the issue is less clear: The Creditor alleges there was a second loan to Mayflower that was secured by another $50,000 certificate of deposit owned by the Creditor. None of the documents presented by the Debtor in his motion to dismiss relate to this second pledge of collateral by the Creditor, and therefore the Court cannot conclude that there is no set of facts by which the Creditor could prove she justifiably relied on the Debtor's representations set forth in (5) above. Accordingly, the Debtor's motion to dismiss is denied to the extent that it seeks to dismiss the Creditor's nondischargeability claims based on the false representations of the Debtor set forth in (5) above.

The Creditor's complaint may also be construed to be alleging that the Debtor committed actual fraud by engaging in a fraudulent scheme of sending various employees of National City Bank to the Creditor's place of employment to pressure the Creditor into signing the loan documents and

---

[9]As noted in footnote 8 above, there are actually two Assignment of Deposit Account forms attached to the Debtor's motion to dismiss. The one marked Exhibit E is dated April 5, 2006, and appears to be complete. The second Assignment of Deposit form, marked Exhibit C, is dated April 6, 2006, and appears to be missing subsequent pages and contains additional events that would constitute default under the agreement. However, the description of the collateral is identical in each, and each contains a cross-collateralization clause providing that the collateral secures all other obligations, debts and liabilities between the Borrower (Mayflower) and the Lender (National City Bank).

that he misused his position as Vice-President of National City Bank to authorize or direct transfers of funds to the Mayflower account prior to the execution of the loan documents. While the Debtor moves to dismiss the Creditor's claims of fraud based on false representations on the ground that the Creditor cannot prove justifiable reliance in light of the loan documents, the Debtor does not address the allegations of actual fraud. When actual fraud is alleged, the focus of these claims is on the Debtor's subjective state of mind at the time of his alleged fraudulent conduct. *See McClellan*, 217 F.3d at 894. Reliance is irrelevant to broader forms of fraud that do not include a representation by the debtor. *Id.* Accordingly, because the language of the Debtor's motion to dismiss attacks the complaint only on the false representations and reliance elements and does not attack the Creditor's claims based on actual fraud, the Court will not address the motion to dismiss in the context of the allegations of actual fraud, and those claims will be unaffected by this opinion.

The Creditor also asserts her claims against the Debtor are nondischargeable under Section 523(a)(4), which provides that:

> (a) A discharge . . . does not discharge an individual debtor from any debt--
>
>            * * *
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

11 U.S.C. § 523(a)(4).

In order to prevail under the fiduciary fraud portion of the statute, a creditor must show that (1) a fiduciary relationship existed between her and the debtor, and (2) fraud or defalcation was committed by the debtor in the course of that relationship. *In re Monroe,* 304 B.R. 349, 358 (Bankr.N.D.Ill. 2004). Thus, the first question is whether the facts sufficiently plead the existence of a fiduciary relationship between the parties.

19

Whether a debtor is a fiduciary under Section 523(a)(4) is a question of federal law. *In re Frain,* 230 F.3d 1014, 1017 (7th Cir. 2000). The broad, traditional definition of fiduciary – as a relationship involving confidence, trust and good faith – is inapplicable in the dischargeability context. *In re Cantrell,* 329 F.3d 1119, 1125 (9th Cir. 2003). Instead, for purposes of Section 523(a)(4), a fiduciary relationship requires an express or technical trust. *In re Cochrane,* 124 F.3d 978, 984 (8th Cir. 1997). Although federal law is determinative on the issue of what constitutes a "fiduciary capacity," state law is relevant in determining whether trust obligations exist. *In re Dobrayel,* 287 B.R. 3, 14 (Bankr.S.D.N.Y. 2002). If state law creates an express or technical trust relationship between the debtor and another party and imposes trustee status upon the debtor, the debtor will be a fiduciary under Section 523(a)(4). *In re Evans,* 161 B.R. 474, 478 (9th Cir.BAP 1993) (citing *In re Baird,* 114 B.R. 198, 202 (9th Cir.BAP 1990)).

The existence of the trust must predate the breach. *See Evans,* 161 B.R at 477. The equitable remedy of a constructive trust or resulting trust is not included within the term since the trust obligations do not exist until the wrong is committed. *Matter of Marchiando,* 13 F.3d 1111, 1115 (7th Cir. 1994). Even if a trust is nominally in existence, but where no real duties of a fiduciary character are imposed in advance of the breach, the absence of such preexisting duties takes the trust outside of the scope of Section 523(a)(4). *Id.* at 1116. A fiduciary relationship that imposes real duties in advance of the breach is almost always characterized by a difference in knowledge or power between fiduciary and principal which gives the fiduciary a position of ascendancy over the principal, such as an attorney-client relationship or the relationship of a managing partner to the limited partners. *Id.*

The Creditor asserts that the complaint alleges facts sufficient to establish a fiduciary relationship existed because she alleged the Debtor was her personal banker, a businessman, friend,

neighbor and employer and thereby she was the subservient party in the relationship. The complaint

is not as clear on this point as the Creditor would like the Court to believe. She does not directly

allege that a fiduciary relationship existed between the parties, but instead relies on the following

allegations:

(1) the Debtor was a Vice President of National City Bank in Rockford, Illinois;

(2) the Debtor was her personal banker and advised both the Creditor and her former
husband concerning investments;

(3) the Debtor had a controlling interest in Mayflower;

(4) the Creditor had confidence in the Debtor and relied upon his integrity and advice and
followed his direction in matters of money management;

(5) he was aware of the balances in the Creditor's various accounts through his position as
Vice-President of National City Bank; and

(6) the Debtor was the Creditor's employer at the Restaurant.

However, although she cites Section 523(a)(4) in her complaint, the Creditor never

specifically alleges that the Debtor was acting in a fiduciary capacity. From the arguments contained

in her response to the motion to dismiss, the Creditor appears to be asserting the existence of a

fiduciary relationship as a justification for not reading the loan documents presented to her to show

her reliance on the Debtor's alleged misrepresentations was justifiable, rather than as a separate

cause of action under Section 523(a)(4). Although the Creditor argues that the allegations establish

she was in a subservient position in the relationship, there are no allegations from which the Court

can conclude that the Debtor owed the Creditor any real duties of a fiduciary character before the

Debtor induced the Creditor to loan money to the Debtor and Mayflower and to pledge her

certificates of deposit as collateral for loans to Mayflower. To the extent the Creditor may be

alleging that a constructive trust arose as a result of the Debtor's wrongdoing, *Marchiando* makes

21

it clear that a constructive or resulting trust does not create the fiduciary capacity contemplated by Section 523(a)(4). *Marchiando*, 13 F.3d at 1115. To the extent that Counts I-III allege the debts are nondischargeable based on Section 523(a)(4) and the existence of a fiduciary relationship, those allegations are dismissed without prejudice.

For the reasons stated above, the allegations relating to fraud by false pretenses and false representations under Section 523(a)(2)(A) and fraud in a fiduciary relationship under Section 523(a)(4) that are contained in Counts I, II, and III are dismissed, except for the allegations pertaining to false representations and false pretenses related to the alleged second loan to Mayflower set forth in item (5) on page 17 of this Opinion. The allegations of actual fraud contained in Counts I, II, and III and the allegations contained in Count IV are unaffected by this decision and remain pending before the Court. Given the Court's conclusions set forth above, it does not appear that re-pleading would cure the dismissed claims. Should the Creditor, however, wish to re-plead, leave is granted to re-plead all counts within thirty days. A separate order will be entered.

Dated: September _____, 2008
SEP 23 2008

WILLIAM V. ALTENBERGER
UNITED STATES BANKRUPTCY JUDGE